case on the dot two dash 17 dash 043 people in the state of Illinois. Thank you. You said you rest up. Are you going on behalf of the defendants? Allison H. Are you going on behalf of the project? Miss Mary A. Good morning, Council. This matter. I'm going to ask you to adjust the microphone. That's probably for someone who's a little bit taller. So and I know the people in the back would like to hear also. Good morning. Good morning. May it please the court Council the facts presented here. Place our justice system in a most difficult space. Where? Sorry, it involves our most precious of protections the protections of the innocence of our children and the rights of the accused and reasonable doubt can begin to blur morality and legality when the safety of our children is at issue. In this case, there's very little doubt that the children of the community were safer on the day that police arrested. Mr. Ressa, but there is a very huge gaping amount of doubt as to whether or not Mr. Ressa ever committed an offense or active on his thoughts and touch the children at issue for the purposes of sexual arousal. I think that the record reflects that the court in this case was highly influenced by the writings that were admitted in court and without any basis for what the defendants mindset was what the condition of his mental illness was at the time that he made those various writings and compared with the time and space that he was at on the date in question left open whether or not there were any reasonable deductions to be made from his writings whether one could take from his writings to say why and how he was acting on the date in question. I think that the evidence shows that had the had the defense employee an expert to investigate these things to read the writings you would have had something more along the lines of Dr. Kane. Dr. Kane relied on the writings. She relied on his his police report what he said at the time of his interview all things that happened in the there and the now and the space that these events actually occur. The council had Dr. Murphy's report. Isn't that correct from September 2015 which had a focus or was looking at the question of insanity but found no symptoms of a psychological disorder that would have impaired the defendant's ability to appreciate the criminality of his conduct? Yes that did exist. And so why should counsel have gone further? Well, I think that because he's a defense counsel and this was a state expert when you compare what Dr. Murphy said again with Dr. Kane and I understand it's it's sometime later, but they're using the same information. Dr. Murphy just one day. He's talking about how the defendant has acknowledged having these visions and talking to God and being with God and then the following day. He just says there's no evidence today. He has denied that he has any any delusional thoughts and he's completely fine today. How are defendants if the defense counsel would have reviewed the writings and would have reviewed the same things that Dr. Murphy reviewed they would have realized I need my own expert. This guy is not acknowledging some of the some of the things that are right there in front of our faces from this record. How do we know that the defense attorney did not do anything further from the record? We know because the the court had to authorize the entry into court into the into the jail of any and all persons. They even had to do it for the for the lawyers when they went and I went through in the facts to set forth each time that the state's experts. Well, you're focusing on the writings. I mean, you didn't need to have a court order for the writings to be given to an expert head defense counsel given the writings to an expert with Dr. Murray's report. Maybe that expert said I've reviewed the writings and the police reports and the defendant's alleged actions and Dr. Murray's report and I don't find a basis to go forward with an insanity investigator insanity evaluation. I mean, we don't know whether that happened or not. Do we? You're right. Your honor. We don't know. But what we do know is that I think that would be taken from Dr. Kane's report that if there was an expert who reviewed all of that and said there is no no basis for insanity and no basis to to present expert testimony at all, then he should have found another expert and and the case. There are cases that we that I cited under Strickland that speak to that. Like, well, if you if you have an expert who's just saying, you know, there's there's evidence here of delusions because Dr. Kane found them based on all of this and there's evidence here of a disjointed thought process and things that you know, even if even if they didn't believe that insanity wasn't was relevant was I'm sorry appropriate to be raised that consulting with that expert would have given him to information that would have should have been presented in his defense because it was presented by Dr. Kane. How do we know that he didn't though? Isn't the record the record is just devoid of that isn't there's no is there anything in the record to show one way or the other whether they did consult with the expert or did not consult well taking the comments earlier. There's no way to say whether or not they had someone review the record. I mean the written reports. I would say that it's inappropriate not to actually examine the defendant as well. But just looking at just that like maybe they had this guy somebody in the background reviewing the reports looking at all the his interviews Etc. Etc. We know they would have generated information that would have been helpful for the defense because we have Kane's report, you know, and I think those things are helpful to the defense even if they don't end up ultimately speaking to insanity. They set forth a different narrative. They challenge the state's theory of the case. I mean the theory that the the comments with the prostitution to me rings ring strong as to how the court misinterpreted the writings and how an expert even if he said, all right, I don't know that insanity is the right way to go who would have given him evidence to present for his defense by putting this man's mental illness into extrapolating from that and explaining to the court. This doesn't mean because he says prostitution near the sentence of children that he is sexually aroused by the contact with children. It's speaking to as Dr. Kane's report sets out the fact that he believes he has a gift from God a gift to be good with children good with children here on Earth, which he describes sometimes as making them laugh having them think that he is he's funny having them want to you know, spend time with him reading books with them, but and they he also gives him a gift of being an amazing writer and he's writing this script and having artistic ability and being a great basketball player. Isn't all of this though something that is more properly brought out in a lateral proceeding where you can go outside of the record that we have? And your honor, I see how that is a point, but I don't think we need to go out of the record here because I think we've got two things. We've got one. We know from the record that no mental health expert on behalf of the defense ever interviewed the defendant and to if this defense counsel had gotten a decent appropriate expert had he consulted the right kind of expert. We know he would have ended up with a report at least at a bare minimum through the right kind of expert being a psychological expert a psychiatric expert. Whomever we're making an assumption there that that the right kind of expert would be would produce the right kind of evidence or testimony. Well, I understand your honor saying but I say even if we had someone who did just as much as Dr. Kane did that even if he decided it wasn't enough to present insanity defense, even if we take and say that it still would have generated a defense to put forward facts to put forward facts to challenge the state's case, which is not what happened here because the expert would have been able to say turning back to the you know, the prostitution argument that what he's saying there is God didn't punish me for masturbating by taking away my gifts, my gift of basketball, my gift of art being artistic of hearing God speak to me and of being good with children here on earth not but the court and the state accepted it and repeated it over and over that well, this means that he keeps writing about masturbating after being good with children clearly being good with children having innocent play with children still sexually arouses him and what this case begs the question of if your honors believe that if you take non-criminal action here today just to give yourself the opportunity of sexual gratification with a child in the future in the future here in the afterlife is enough to satisfy as a matter of law the sexual gratification prong then there's there's less to discuss on that issue, but I assert that taking action today be it I'm going to I save the children for the future by praying over them taking some or by spending time with them non-sexual time I secure a path and opportunity for in the future again here having but let's know in some fictional future or whatever for the opportunity of maybe I'm going to have some sexual gratification it may it may make some of it some of the arguments less less compelling but I can't demand I don't think it's a matter of law you can say that if his conduct was designed to secure an opportunity in heaven to to have sexual gratification that it's that it satisfies the prong here because based on the state's theory of the case one would be left typically sexually frustrated if that was the situation that if that was for the purposes of some sort of sexual gratification and is it fair to say that every time someone is attracted to another person and let's speak man and woman man and man woman and woman as opposed to children that every single contact is for sexual gratification if I'm sexually gratification from that hug if I you know if I I don't think that you can say that every time someone who has sexual attraction to children makes any sort of conduct with a contact with a child is for the purposes of sexual gratification and here they could have challenged you're talking about with strangers and we're not talking family obviously here or friends were talking about an he had never met before and whom he sought out so that the context I think is very important here and that isn't part of what you just were talking about so I think we have to look at that as well when we look at the intent of the defendant I absolutely agree your honor and taking it back to that that analogy there you know if you're you're in a bar and you see someone across the and so a stranger has contact there is that is the best to adults correct correct but is is the conduct is the conduct at the end of the evening or 10 minutes later even of a hug a shake in a hand for the purposes of sexual gratification and that's what we're talking about here and the fact of the matter is that the evidence that they the evidence that was relied on to just simply say as a as a matter of course if you have had a feeling desires every contact with children is is wrong and I said every how would you ever prove intent I mean you know the statute doesn't just talk about contact of a sexual nature I mean it's any part of the body for the sexual graphical sexual arousals or gratification I mean how would you prove intent based upon your theory I because I think in in most situations there's some sort of even if there's if it's non-sexual contact it involves more of a more of a groping and more of a I can't speak to every other type of situation and how that how they would establish the contact here I'm all I'm trying to to say is that based on these facts facts who talks over and over again about needing to be near children to save them and I understand what save means here and I'm not trying to underplay what save means here but again it's an opportunity at the future for the possibility in heaven of sexual gratification but to save children here by closeness to pray over them he other other things in the state saying well he's got other times where he says he's he's touched a child's leg and he's writing about it but he's writing about praying over them at that point to save them for him for himself for the future aren't you asking us to weigh the evidence though aren't you asking us in a sense to be the fact finder here and to wait this circumstantial evidence as to whether or not it's it has merit I'm not asking the court to wait I'm asking the court to consider that there was no real challenge made by the defense attorneys to it I think that means that he allowed false premises and suppositions to stand by not presenting any other theory of what was being written and not challenging without knowing the mind the mental illness of the defendant at these various points of his writings who are we to sit here and assume and try and piece together what his what his mindset was and what he meant when he was writing it I just want to clarify one thing on your one argument about sufficiency of the evidence when you talk about the the one time I think you're talking about only one count of the child abduction that's with J.E. the younger child correct yes so that was with J.E. the younger child as far as not being able to as far as that she didn't tell anybody before trial that he attempted to lure her into the car correct okay so that's the only count we're talking about as it relates to child abduction yes right and that was count six correct and that's the one where the police had eyes on them from start to finish right I just want to make sure I knew which okay you'll have time thank you good morning your honors counsel may it please the court Mary Fleming assistant state's attorney on behalf of the people I'm gonna start with the first issue whether counsel was ineffective for failing to raise an and I just want to clarify for the record that dr. Murray was not a state expert he was appointed by the court he made a report returnable on the state's motion correct your honor and he's employed by court services correct correct your honor not the state not a state expert and I also want to just clarify that he did review documents from the house and car and first page of his report first paragraph he specifically states examiner reviewed a of information which included documents from the defendant's house a car and on this record we don't have information supporting an insanity claim it's possible that could be fleshed out later but in this case we just have information that shows from the doctors that although defendants suffered from mental illness he didn't meet the legal definition of insanity on that issue Murphy for the proposition that the council first to investigate what red flags are raised Murphy regard really fitness than the court went on to say it may have led to an insanity defense do you find Murphy to be on point here not exactly your honor and in that case we had a little more information on the record to we get through the trial and then in closing counsel starting to push saying on the record okay I knew he was in our to you which appears to be like some sort of mental hospital residential treatment right right so we knew that we knew that defendant said to couldn't speak to his counsel couldn't really communicate with him and counsel says on the record I kind of thought maybe he'd get it together at some point if we could work this out we don't have that kind of information in this case about what defense counsel did or didn't do counsel keeps arguing that trial counsel should have gotten an expert that would have shown something these are all things we could flush out on a post conviction we can flush out what the council did and didn't do we could flush out what an expert would or wouldn't say and we just don't have that here same thing with Wilson v. Getz which is the other case they cite and that's a federal habeas case and a federal habeas for the federal court to take a look at that case we have to have had a full round of a state court looking at it we've got this in the tribal court in the appellate court presenting your claims to the Supreme Court and we've got far more information than we do here which is just there's some anecdotal evidence in the record that makes it just didn't meet the legal definition of insanity how does the defendants offering candy and money to these children establish sexual intent if it does on the defendants part especially when the touching here again was not to the sexual good parts of the body here we have defendant telling us what he's doing he likes to write he likes to plan we've got his plans in writing we've got sections of the record where the exhibits talk about I'm going to buy candy for kids I'm going to bring out toys I'm going to bring cash for a motel I'm going to pick up kids I'm going to get the kids away from the adults he keeps showing us through his writings what his plan is and he does that in person to the first incident on May 27 he's trying to get the little girl away from the group Gail is counting for hide-and-seek but he can see he's trying to get her away from the group he's trying to talk her into it come on come with me I've got M&M cookies she doesn't like those he's trying to get her away so he can touch her and when he realizes that isn't going to work he's got to go with the plan okay the adults aren't there I can still touch her on the playground I can still hold her down on the slide and she's saying he's touching me here here here on my torso at trial she's telling everyone in the second incident on June 1st he again trying to get the kids away I've got candy I've got more candy in my car I've got candy in this other come with me I'm going to candy money plus the writings shows the sexual correct but even on their own even without the writings it's not much of a leap to say that this man who's driving to other towns he's driving around apartment complexes he's going to play with kids he doesn't know let's play hide-and-seek he's trying to get kids away and then touch them it's not a leap in logic to say that he was doing this for his sexual gratification but when you add the writings to it it becomes more than clear that that's what he was doing were the writings overkill though were the writings council argues and part of the brief that they were voluminous and they stretched back quite quite a distance I think 20 time maybe was the first writing true but the state didn't come cut back what we put in and as the judge said he even said on the record it was necessary to read these all to get a good picture of what was random they don't all go together in the beginning but when you read them all you see what the plan was get kids away from adults lure them away candy money cookies get them away get them you want to have sex with them you want to be with them and have them forever when adults step in you've got to get them out of the picture how do you respond to the argument though that the sexual part was going to happen in heaven and not at that moment on the playground or in the we don't know for sure where it was going to happen and it was clear that he was touching them even for sexual gratification there and he was trying to get them away but the kids were pretty smart they wouldn't always go with him one of them went back to tell her mom a couple their dad comes out and they go off his plans kept getting dashed it but he's adjusting as they go along I'm still going to be able to touch them I'm still going to try he's got these that he set out for us get kids away from adults get them to a motel get privacy with them touch them there's no there's nothing that says that he was only going to do this in heaven and certainly he was trying to put forward his plan here not just once but twice and the writing show over time and obsession with children that as the doctor say it was accelerating we get to the point where we have two times within four days that he's trying to grab kids get them away touch them and so the evidence in this case definitely demonstrates that there wasn't a reasonable doubt and the sentence in this case was also appropriate well with respect to the sentence I have a question I mean didn't the trial judge here put unnecessary and improper weight on protecting the public we're talking about a 20-year sentence how is that not beyond the purpose and spirit of the law when the defendant had no felonies and just an old disorderly conduct on his record but when we look at this case he's accelerating he's we've got two separate instances where there are multiple children that he's trying to pull away he's trying to touch and we had several different counts that the judge was sentencing on 20 years it isn't like the case that defendant sites where the defendant was given 50 years for two brief touches of two girls that he didn't know we have this case where he was really spending time he was looking for kids he was trying to pull them away he's touching them repeatedly he's doing this for sexual gratification we've got a little more evidence in this case than some of the other cases it's not really a disparate sentencing case between those two the evidence was appropriate in this case that there was a need for protection of the public and that is something that the judge can consider when he sentences and we would submit that he properly considered the evidence and properly sentenced defendant in this defense acknowledges here that there are other circumstances that that led to the whole I understand there's the candy there's the money there's definitely evidence and no one's trying to deny of him trying to take the children have with the children the question is why and why why didn't the defense counsel explore it because there is there is a record again I even though I speak a lot about an expert because I do believe an expert could have helped there's no need it didn't need to have to be an expert defense counsel could have put on some of these arguments as to he knows that he needs to be out of the line of adults because they think he's a pervert even though he's not and he needs to spend time with the kids to get to to write down certain certain things or or pray over them get them into heaven to secure their spot well now you're talking about trial strategy no that's different than your argument in your brief and correct I don't mean to get into necessarily trial strategy I just mean that an expert could have it was not reasonable given the given the the writings and the mind the mental aspect of things that were present just from everything presented from the state for the court to assume that those factors couldn't have other reasons and that they should but they should beyond a reasonable doubt established that the touching here was sexual just because of those other circumstances and I think that with expert testimony could have helped it and yes I see how it can go into strategy not that once you get to if he would have had the evaluation right what evidence would that have used it but it starts with his failure to even have that examination because if if those records were examined he would have had Evan he would have presented expert testimony because he would have had at least what dr. Dr. Kane Dr. Kane had and what you and dr. Murray's report was incomplete I think that's that's a very important factor is that his report literally said there is more evaluation that needs to get done and their defense counsel didn't have additional evaluation for either of those reasons either to evaluate sanity either to evaluate mental illness or follow up on the report of dr. Murphy would have given him evidence he could have used to set out a defense to begin to challenge the state's evidence at all and the cumulative effect of all of the failures of the defense counsel to challenge these assumptions that were being made and and you know resulted in the court just getting bombarded with one version of what this man's ramblings in certain times mean and he didn't necessarily need an expert but the the privacy for what issue I think is raised in the writings itself that the privacy for what and why that mere fact that he wants privacy doesn't mean he was getting sexual gratification and the state argues well you had it wasn't bombarded because you had to read them all the judge said how you had to read them all nobody read them all it was piecemeal picking from 2010 and adding it to something that was written in 2013 or you know reading half of what was said and not the rest of the sentence which says by the way this is all going to happen in heaven I mean here you have a man fighting doing something here on earth and I believe it is possible to both have you know these horrible thoughts that you're putting off to do in the future and still want to do good here on earth you argued in your brief that these writings were more prejudicial than prohibitive first of all that they were irrelevant and if they were relevant that they were more prejudicial than prohibitive now in your argument you seem to be relying on the writings to show a lack of intent and I don't mean to take that route your honor I do think that they were overly prejudicial but I also think that from it that if if they were going to let it get in that if since the to the court allowed all of this to get in there were things that the that the defense counsel could have done in its case once this ruling came down or to challenge it they could have you know cast it in a different light and presented a different narrative but yes it was I believe prejudicial and irrelevant I think it was completely irrelevant under the facts here I just think if it was getting in which it was that at that point in time counsel is ineffective for not presenting a defense and using it towards that defense if they're going to let it in and they're going to interpret it to me XY and Z you have to use it sort of as a sword back and say but what you're saying isn't really being supported by these writings that I wish you would have never let in because they were highly prejudicial and irrelevant thank you very much counsel the court will take the matter under advisement and render a decision in due course